IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KESTREL HOLDINGS I, L.L.C.,

Plaintiff,

v.

LEARJET INC. and BOMBARDIER INC.,

Defendants.

MBD # _____

**04 MBD 10068**

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY

### I. INTRODUCTION

A lawsuit styled *Kestrel Holdings I, L.L.C. v. Learjet Inc. and Bombardier Inc.*, Case No. 02-2388 (D. Kan.) is currently pending in the District of Kansas ("Underlying Case"). The Underlying Case arises out of Plaintiff's purchase of a Learjet Model 60 private jet aircraft from Defendants. Plaintiff's pending claims against both Defendants in the Underlying Case are for breach of contract and breach of implied warranties.

Under the current scheduling order in the Underlying Case, fact discovery closed on November 14, 2003 and the expert discovery closes on March 12, 2004. The parties are to submit a Pretrial Order on March 5, 2004 and a Pretrial Conference is scheduled for March 16, 2004. The Underlying Case is also set on a February 1, 2005 trial docket.

This Motion relates to expert discovery served on one of Defendants' experts, Thomas Eagar, through a subpoena duces tecum properly served on him by Plaintiff in this jurisdiction. *See* Rule 45 Subpoena and Proof of Service attached as Exh. A hereto. Mr. Eagar's subpoena

required him to produce documents at a Boston law office on February 24, 2004 at 10:00 a.m. EDT. *Id.* The subpoena did not command his attendance anywhere at any time. *Id.*

## II. FACTUAL BACKGROUND

To put this issue into context, Plaintiff needs to explain the course of expert discovery in the Underlying Case. On December 23, 2003, less than three weeks after Plaintiff timely produced its experts' reports on December 5, 2003, and over a week before Defendants deposed the first of Plaintiff's two experts on January 2, 2004, Plaintiff voluntarily produced, without objection or any withholding whatsoever, the exact same types of documents Plaintiff has requested from Mr. Eagar in document request nos. 1-5 of the subject subpoena. In particular, Plaintiff produced both retention agreements for its experts, all correspondence between Plaintiff's experts and anyone, including Plaintiff's counsel; all billing invoices and payments thereon (which show all time they spent on this matter); and all notes and other documents in their respective working files. Defendants deposed both of Plaintiff's experts and never made any suggestion that they withheld any discoverable documents.

Near the close of business on January 27, 2004, Plaintiff's counsel received Rule 26(a)(2) reports for all three defense experts, including Mr. Eagar. Mr. Eagar's initial Rule 26(a)(2) report was insufficient, however, because it did not include his qualifications, a list of his publications over the last ten years, the compensation to be paid for his study and testimony; or a list of the other cases he had testified as an expert at trial or by deposition over the last four years. *See* Fed. R. Civ. P. 26(a)(2)(B).

Plaintiff's counsel promptly sent all defense counsel a January 29, 2004 letter informally requesting the exact same types of documents from all three experts that Defendants had

2

requested from Plaintiff's experts and that Plaintiff's produced in total without any objection whatsoever. *See* Exh. B hereto. Plaintiff's counsel further requested that Defendants' experts produce these documents with the same expediency Plaintiff's experts produced them when requested by Defendants. Despite the expediency requested by Plaintiff in light of a February 6, 2004 deadline to file written objections to expert reports and the need to depose all three defense experts before the impending March 12, 2004 expert discovery deadline, Plaintiff's counsel received no response until after it communicated this informal request again one week later on February 6, 2004. *See* Exhs. C and D hereto.

Instead of providing the requested documents with the same expediency as Plaintiff did for Defendants, Defendants' counsel from San Antonio, Texas ("Texas counsel") responded by stating the experts would not provide the requested items because there was no prior formal document request for said information. *See* Exh. D. Texas counsel added that had Plaintiff made such a formal request Defendants would have produced much of the sought information on the same day they produced their experts reports. *Id.*

Given Texas counsel's unwillingness to provide the requested expert information informally, Plaintiff's counsel decided the best and quickest course of formal discovery would be by issuing subpoenas duces tecum to all three defense experts. Consequently, Plaintiff's counsel responded to Texas counsel's February 6th letter on the very same day asking him whether he would accept service of such subpoenas on behalf of all three defense experts. *See* Exh. E hereto. Plaintiff's counsel also confirmed that they were only seeking the exact documents Defendants requested from Plaintiff's experts that Plaintiff's experts produced promptly and well before their scheduled depositions, and without any objections whatsoever. *Id.* Texas counsel responded in a February 9, 2004 letter stating his belief that the thirty-day response time under

3

Rule 34 would apply to any Rule 45 subpoena issued by Plaintiff to the defense experts. *See* Exh. F hereto. Texas counsel also wanted to wait until the defense experts' deposition to "negotiate the production of certain documents." *Id.*

After Plaintiff's counsel sent its February 6th letter, he was able to review for the first time the remaining required portions of Mr. Eagar's Rule 26(a)(2) report, which had just been produced by Texas counsel two days earlier. This is when Plaintiff learned that Mr. Eagar has testified in an extraordinary 75 different cases since 1999, which prompted Plaintiff to seek the documents requested in nos. 6-11 of Mr. Eagar's subpoena. *See* Portion of Mr. Eagar's Rule 26(a)(2) Report attached as Exh. R hereto.

Faced with the impending March 12, 2004 expert discovery deadline and the need to receive and review the documents requested before taking each defense expert's deposition, Plaintiff's counsel properly served subpoenas duces tecum directly on all three defense experts in the respective jurisdictions they reside in (Chicago, Tulsa, and Boston). All three subpoenas were identical wherein they sought the exact same types of documents Defendants requested from Plaintiff's experts, which were produced promptly and without any objections (document request nos. 1-5 of Exh. A). In addition, the subpoena duces tecum issued to Mr. Eagar sought financial information related to the extraordinary 75 cases he has testified in over the last four years (document request nos. 6-11 of Exh. A).

On February 11, 2004, the same day Mr. Eagar's subpoena was properly served on him, Texas counsel sent Plaintiff's counsel a letter confirming that he was in receipt of a copy of Mr. Eagar's subpoena. *See* Exh. G hereto. Texas counsel also wanted to limit Mr. Eagar's subpoena to exclude document request nos. 6 and 7. *Id.* Importantly, with respect to document request nos. 1-5, Texas counsel did not identify any objections and

indicated Mr. Eagar would produce responsive documents if Plaintiff agreed to these exclusions. *Id.* Even more notable, Texas counsel's February 11th letter does give any indication that Mr. Eagar was not properly served with his subpoena or that document requests nos. 1-5 are vague, unduly burdensome or unreasonable. *Id.*

By letter dated February 13, 2004, Plaintiff's counsel responded by summarizing the reasons the subpoenas had to be served on the defense experts. *See* Exh. H hereto. Plaintiff's counsel also pointed out that the parties appear to have a genuine dispute as to document request nos. 6-11 of Mr. Eagar's subpoena and explained that these requests were issued because of the extraordinary number of cases Mr. Eagar had testified in since 1999. *Id.* Plaintiff's counsel also pointed out that Plaintiff had already compromised and asked for only four years of financial information even though courts routinely hold that a five-year timeframe is reasonable. *Id.*

The same day, Texas counsel sent Plaintiff's counsel another letter calling Plaintiff's expert discovery untimely; indicating he believed the defense experts had a strong legal position with respect to their objections; indicating that he was going to produce all three experts on the potential deposition dates the parties had previously discussed if Plaintiff could complete its document discovery; and questioning the professionalism of Plaintiff's counsel. *See* Exh. I hereto.

Plaintiff's counsel responded on the same day confirming that Plaintiff was only trying to conduct expert discovery as contemplated by the scheduling order in the Underlying Case and by pointing out that, in all previous correspondence on this matter, Plaintiff clearly wanted documents from the defense experts before taking their depositions. *See* Exh. J hereto. Plaintiff's counsel also asked Texas counsel to refrain

from his constant rhetoric and questioned how his personal attacks furthered any party's interests in this matter. *Id.*

In another letter dated February 17, 2004, Texas counsel again asked whether Plaintiff would depose the defense experts before they produced any documents. *See* Exh. K hereto. Plaintiff's counsel responded on the same day by stating the same thing he had stated in seven previous letters – each defense expert needed to produce documents requested by Plaintiff before Plaintiff could take each respective deposition. *See* Exh. L hereto.

On February 23, 2004, the day before Mr. Eagar was required to produce documents in response to his subpoena, Texas counsel faxed Plaintiff's counsel a document entitled "Objection to Plaintiff's Subpoena" complete with a copy of the subpoena served on Mr. Eagar. *See* Exh. M hereto. Importantly, this document lists several types of objections to Mr. Eagar's subpoena for the very first time: (1) Plaintiff's requests for retainer agreements, billing statements, time records and other documents are vague, unduly burdensome, seek private and protected information regarding Mr. Eagar's taxes, and exceed the bounds of reasonableness; (2) the subpoena was not properly served since Mr. Eagar did not receive a witness fee and mileage reimbursement and since Plaintiff's counsel was not the one who provided a copy of the subpoena to Texas counsel; and (3) that the "recovery and compilation of the requested documents would be exhaustive and an encumbrance of Mr. Eagar's valuable time and energy," and Plaintiff has not made any efforts to compensate Mr. Eagar for gathering the documents requested in the subpoena. *Id.* This document also makes the incredible statements that Mr. Snow has attempted to negotiate the depth and breadth of his subpoena with Plaintiff, and that Plaintiff has disregarded those attempts. *Id.*

Even though this documents was entitled "Objection to Plaintiff's Subpoena," it requests this Court to quash Mr. Eagar's subpoena yet it contained no indication that anything had been filed by Mr. Eagar in this Court. *Id.* It was also signed by Mr. Eagar as if he were proceeding *pro se*, yet it was obviously prepared and sent by Texas counsel. *Id.* In an attempt to clarify these discrepancies and to make sure the parties did not file competing miscellaneous actions in this Court, Plaintiff's counsel sent Texas counsel a letter on the very same day this document was received, asking for clarifications in these areas. *See* Exh. N hereto. Texas counsel sent Plaintiff's counsel another letter, which suggests that Plaintiff's counsel doesn't follow the "Rules" and indicating that he believes Mr. Eagar will be entitled to costs under Rule 45(c)(1). *See* Exh. O hereto. Thereafter, February 24th came and went without the production of any documents whatsoever in response to the subpoena served on Mr. Eagar.

With this background information in mind, and by way of this Motion to Compel, Plaintiff now respectfully seeks rulings on the issues of the discoverability of documents sought in the subpoena duces tecum served on Mr. Eagar; whether Mr. Eagar and/or his counsel should be responsible for the reasonable attorneys' fees and expenses in having to prepare, file, and pursue this Motion, including costs of service of the subpoena; and/or whether Mr. Eagar and/or his counsel should be held in contempt.

## III. ARGUMENT

### A. Thomas Eagar's blanket objections to document request nos. 1-5 of his subpoena are untenable and not made in good faith.

The scope of information obtainable through discovery is quite broad. A witness may be questioned about any information which bears on the interests of the witness in the case in litigation. 31A Am. Jur. 2d (*Expert and Opinion Evidence*) § 96 (1989). Rule 26(b)(1) provides "[p]arties may obtain discovery regarding any matter...that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Further, "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* When the discovery sought appears relevant, the individual or entity objecting to the discovery on grounds that a request is overly broad has the burden to support its objection, unless the request is overly broad on its face. *EEOC v. Kansas City Southern Railway*, No. 99-2512-GTV, 2000 WL 33675756 (D. Kan. Oct. 2, 2000). Mr. Eagar has neither attempted, nor can he carry his burden to support his blanket "vagueness," "undue burden," "privacy interests" and "unreasonableness" objections to producing documents responsive to request nos. 1-5 of his subpoena.

The document requests at issue are limited in time or confined to discrete subject matter. The requests also set forth the exact items to be inspected, and describe each with reasonable particularity. In five straight letters, Plaintiff's counsel indicated to Texas counsel (who indicates he is representing Mr. Eagar in this dispute) that, with document request nos. 1-5, Plaintiff is only seeking the exact same types of documents from Mr. Eagar that Defendants requested from Plaintiff's experts, which were promptly produce by Plaintiff's experts in total without any objections whatsoever. *See* Exhs. B, C, E, H and J. Most importantly, in three of Texas counsel's response letters, Texas counsel gave no indication that he did not understand

8

exactly what documents Plaintiff was seeking from Mr. Eagar in document request nos. 1-5. *See* Exhs. D, G and I. To the contrary, this correspondence indicates that Texas counsel knows exactly what type of documents Plaintiff is seeking from Mr. Eagar in these document requests, especially in the two letters where he indicates that Mr. Eagar would have produced these documents on the same day as his expert report had there been an outstanding Rule 34 document request, and where he talks about compiling the responsive documents and offers to produce all of them with respect to Mr. Eagar, but only if Plaintiff would exclude document request nos. 6 and 7 of the subpoena. *See* Exhs. C and G hereto. Faced with these facts and admissions, Mr. Eagar's blanket objections of "vagueness," "unduly burdensome" and "unreasonableness" are untenable and not made in good faith.

Mr. Eagar's "protected information" and "privacy" objections are also untenable and lack good faith. The simple reason Plaintiff's experts produced these same types of documents without any objections whatsoever is that these are the same types of documents litigants in Kansas (and in other jurisdictions including Massachusetts) routinely request in expert discovery. These types of documents are all likely to contain relevant, and certainly discoverable, information. For example, retention agreements describe the scope of an expert's retention and contain information about what he is told about a particular case the expert is retained on. Billing statements typically describe how much time the expert has spent on particular tasks, what dates and times he worked on the case, and how much the expert has been paid. Correspondence and notes can describe what the expert is told at certain times about the case. None of these documents are protected or private. Indeed, Mr. Eagar cannot argue that these documents contain protected or private information related to his "taxes" when Rule 26(a)(2)(B)

specifically states that he has to voluntarily disclose "the compensation to be paid for [his] study and testimony." *See* Fed. R. Civ. P. 26(a)(2)(B).

### B.   The financial documents requested in request nos. 6-11 are discoverable.

In document request nos. 6-11, Plaintiff seeks financial documents from Mr. Eagar, an expert that has testified in an extraordinary 75 different cases over the past four years, because the documents may be relevant to show possible bias which relates to his credibility as an expert.

As an initial matter, Mr. Eagar's "Objection to Plaintiff's Subpoena" overstates and/or misstates the holdings of the two cases he cites to support his objections to the document requests seeking his financial information from the past four years. In fact, these cases actually support Plaintiff's position that Mr. Eagar must produce all documents requested in document request nos. 6-11.

In the first case cited, *Amster v. River Capital International Group, LLC*, No. 00 CIV. 9708, 2002 WL 2031614 (S.D.N.Y. Sept. 4, 2002) (attached as Exh. P hereto for the Court's convenience), the issue of whether an expert's compensation from other litigation was not even before the court. The defendants in *Amster* only sought to compel the production of all of plaintiff's expert's invoices in connection with that litigation. *See id.* at *1. Consequently, Mr. Eagar cannot cite *Amster* in support of his objections to document request nos. 6-11 of his subpoena. In fact, two of the cases cited in *Amster* support Plaintiff's position that these documents, and the billing statements Mr. Eagar has rendered in this case, may be relevant to bias. *See Boselli v. Southeastern Pa. Transp. Auth.*, 108 F.R.D. 723, 725 (E.D. Pa. 1985) (ordering disclosure, *inter alia*, of the amount of the experts' compensation in the case, and the total compensation paid to the experts over the prior three years); *Butler v. Rigsby*, Civ. No. 96-

2453, 1998 U.S. Dist. LEXIS 4618 (E.D. La. Apr. 7, 1998) ("The courts have held that the amount of income derived from services related to testifying as an expert witness is relevant to show bias or financial interest.).

The other case cited by Mr. Eagar, *Trower v. Jones*, 121 Ill. 2d 211, 520 N.E.2d 297 (Ill. 1988) (attached as Exh. Q hereto for the Court's convenience), is an Illinois Supreme Court case which held that it was proper to inquire how much an expert was earning annually for services relating the rendering expert testimony. This is the exact information Plaintiff is seeking in document request nos. 6-11 of Mr. Eagar's subpoena. A quick read of *Trower* demonstrates that this holding did not limit such an inquiry to only two years because the seeking party wanted more than two years of such information. The period of time was not at issue. *Trower* was an appeal from a trial wherein the party seeking this information only asked questions about an expert's income for two years – questions the expert answered at trial. *Trower*, 121 Ill. 2d at 214, 520 N.E.2d at 298. On appeal, the issue was whether any such trial inquiry was permissible in the first place, not whether a longer or shorter time period was permissible. *See id.*

*Trower* also provides all the reasons this Court needs to compel Mr. Eagar to fully comply with document request nos. 6-11 of his subpoena. As *Trower* discusses,

> the principal safeguard against errant expert testimony is the opportunity to cross-examine, which includes the opportunity to probe bias, partisanship or financial interest. The considerations discussed above further illuminate the ever-increasing importance of bringing to the jury's attention facts by which the jury may reasonably discount the credibility of an expert's testimony.

*Trower*, 121 Ill. 2d at 217, 520 N.E.2d at 300 (citations omitted). In reaching its holding allowing inquiry into the areas Plaintiff is seeking in Mr. Eagar's subpoena, *Trower* kept these considerations in mind, along with "an appreciation of the fact that the financial advantage which

accrues to an expert witness in a particular case can extend beyond the remuneration he receives for testifying in that case." *Trower*, 121 Ill. 2d at 218, 520 N.E.2d at 300.

Having failed to met his burden to support his objections to document request nos. 6-11, Mr. Eagar should be required to produce all responsive documents within fourteen (14) days so that Plaintiff can take his deposition and complete expert discovery as to him.

### C. Mr. Eagar was properly served with a Rule 45 subpoena duces tecum.

In his "Objection to Plaintiff's Subpoena," Mr. Eagar also, for the first time, raises two technical objections to Plaintiff's service of a subpoena on him. First, he incorrectly asserts that he is entitled to a witness fee or mileage reimbursement under Rule 45(b)(1). This technical objection is obviously misplaced since the subpoena does not command Mr. Eagar to appear anywhere at any time. *See* Exh. A and Fed. R. Civ. P. 45(b)(1). It only requires that the responsive documents be produced by 10:00 am EDT at a Boston law firm on February 24, 2004. Mr. Eagar could have easily produced these documents without appearing. Had Plaintiff issued a subpoena commanding Mr. Eagar to appear to testify in Court or by deposition, Plaintiff would have tendered a $42.28 witness fee and mileage reimbursement to him.

Likewise, Mr. Eagar's "new" technical objection that service was improper because Plaintiff's counsel did not serve Texas counsel with his subpoena is misplaced and, more importantly, moot. Surely, Plaintiff's counsel has no requirement to serve defense counsel with this subpoena before Mr. Eagar is actually served. And, as indicated by Texas counsel's February 11th letter, he received a copy of Mr. Eagar's subpoena directly from Mr. Eagar on the same day Mr. Eagar was served. In fact, Texas counsel received Mr. Eagar's subpoena and sent his February 11th facsimile letter to Plaintiff's counsel before Plaintiff's counsel had even

12

received the Proof of Service from the process server. There is no need to send a courtesy copy of something that Texas counsel already possesses. Texas counsel received Mr. Eagar's subpoena on the same day it was served and enjoyed ample time prior to February 24th, the scheduled day for production of documents to object to the subpoena.

### D.  Plaintiff is not required to compensate Mr. Eagar for gathering the documents requested in his Rule 45 subpoena.

This "new" objection is based on the false premise that the "recovery and compilation of the requested documents would be exhaustive and an encumbrance of Mr. Eagar's valuable time and energy." *See* Exh. M. As described above, this assertion flies directly in the face of Texas counsel's admissions that these documents could be compiled and produced if Plaintiff would exclude document request nos. 6 and 7 of Mr. Eagar's subpoena. Even so, nothing in Rule 45 requires Plaintiff to compensate Mr. Eagar for gathering the documents requested in his subpoena. Under Rule 26(b)(4)(C)(i), as referenced to Rule 26(b)(4)(A), a party who are seeking to depose another party's testifying expert is responsible for that expert's reasonable fee for time spent testifying at deposition. Indeed, the parties have agreed to compensate each other's experts for their deposition testimony time, not for time spent in responding to discovery. If Texas counsel is trying to infer that Rule 26(b)(4)(C)(ii) somehow applies to Mr. Eagar, he is incorrect. *See* Rules 26(b)(4)(A) and (C)(i) and notes thereto. Rule 26(b)(4)(C)(ii) must be read in conjunction with Rule 26(b)(4)(B), and does not apply to testifying experts such as Mr. Eagar, only consulting experts who are not expected to be called as a witness at trial. *See* Rules 26(b)(4)(B) and (C)(ii) and notes thereto. Even if Mr. Eagar is somehow entitled to compensation under Rule 26(b)(4)(C) for gathering responsive documents, the rule does not give

him the right to withhold the documents requested in his subpoena before any such compensation is tendered to him.

### E. Mr. Eagar's claims that he attempted to negotiate the depth and breadth of his subpoena and that Plaintiff disregarded these attempts are incorrect.

Based on the attached correspondence and everything discussed above, Mr. Eagar, through Texas counsel, cannot reasonably assert that he has attempted to negotiate the depth and breadth of his subpoena or that Plaintiff has disregarded these attempts. Mr. Eagar's "attempts" consist only of holding documents responsive to request nos. 1-5 and 8-11 "hostage" until and unless Plaintiff would agree to exclude request nos. 6 and 7 from his subpoena. If this was truly the case, Mr. Eagar should have produced all documents responsive these other document requests, especially those responsive to document request nos. 1-5, on February 24th. Contrary to one of Mr. Eagar's stated assertions, Plaintiff is the only party who has wasted "valuable time and energy" and resources in attempting to complete simple and straightforward expert discovery before taking Mr. Eagar's deposition. The actions of Mr. Eagar and his counsel have now risen to the level of wasting this Court's valuable time, energy and resources and cannot go unnoticed. Accordingly, an award of the Plaintiff's reasonable attorneys' fees and costs in preparing, filing, and pursing this Motion, along with the costs to serve Mr. Eagar, is in order. Likewise, an Order of Contempt under Rule 45(e) is appropriate.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff requests this Court enter an Order requiring Thomas Eagar to promptly produce all documents requested in the subpoena issued to him by Plaintiff; to further require Mr. Eagar and/or his attorneys to pay Plaintiff its reasonable attorneys' fees and expenses related to this Motion and costs of service of the subpoena; and to further hold Mr. Eagar and/or his attorneys in contempt for the complete failure to obey the subpoena without adequate excuse.

Respectfully submitted,

DWYER & COLLORA, LLP

*[signature]*

David A. Bunis (BBO # 550570)
Nicholas J. Walsh (BBO # 647702)
600 Atlantic Avenue
Boston, Massachusetts 02210-1122
(617) 371-1000
(617) 371-1037 (facsimile)

Gary D. Justis
Lathrop & Gage L.C.
10851 Mastin Boulevard, Suite 1000
Overland Park, Kansas 66210-1669
(913) 451-5144
(913) 451-0875 (facsimile)

ATTORNEYS FOR PLAINTIFF
KESTREL HOLDINGS I, L.L.C.

## CERTIFICATE OF SERVICE

| William R. Sampson, Esq.<br>Matthew C. Miller, Esq.<br>Shook, Hardy & Bacon L.L.P.<br>10801 Mastin Boulevard<br>Suite 1000<br>Overland Park, KS 66210-1671<br><br>*Attorneys For Defendants* | Ron A. Sprague<br>Gendry & Sprague, P.C.<br>645 Lockhill Selma<br>San Antonio, TX 78261-5057<br><br>*Attorneys for Defendants and Thomas Eagar* |
|---|---|

I hereby certify that I caused copies of the above and foregoing to be served upon the persons listed above by prepaid Federal Express, overnight delivery, on March 3, 2004.

_____
Nicholas J. Walsh